UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DEMAJIO J. ELLIS,<br>        Plaintiff,<br><br>        v.<br><br>SGT. BURRIS, *et al.*,<br>        Defendants. | )<br>)<br>)<br>)  CAUSE NO.: 3:16-CV-561-JEM<br>)<br>)<br>) |

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment [DE 81], filed on March 6, 2019. For the following reasons, the motion is granted.

**I.    Procedural Background**

On November 18, 2016, Plaintiff Demajio J. Ellis, a prisoner in Westville Correctional Facility, filed an Amended Complaint *pro se* alleging that Defendants Sgt. Alonzo Burris, Sgt. Steven Penning, Officer Daniel Nicksich, and Officer Brandon Mahoney violated his Eighth Amendment rights by confining him in unsanitary conditions. On March 6, 2019, Defendants filed a Motion for Summary Judgment. Plaintiff filed a response on May 22, 2019, and on June 5, 2019, Defendants filed a reply.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

**II.    Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court

of the basis for its motion and identifying" the evidence that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In ruling on a motion for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. The court will not "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Summary judgment is not a substitute for a trial on the merits or a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the court's sole task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne*, 337 F.3d at 770. If a reasonable factfinder could find in favor of the nonmoving party, summary judgment may not be granted. *Id.*

### III. Material Facts

The following description is largely adapted from the facts alleged in Defendants' Statement of Facts Not in Dispute, which Plaintiff concedes are "correct." Resp. at 2 [DE 87]. The Court construes all facts and draws all inferences in the light most favorable to Plaintiff, the non-movant.

Plaintiff was housed in a single-person cell in the restrictive housing unit (B-Pod) at the

2

Westville Correctional Facility. On January 12, 2016, around 9:10 p.m., Plaintiff was woken up by people yelling about the toilets overflowing. Ellis Dep. 9:6-13 [DE 82-2]. He saw that sewage was overflowing from his toilet.[1] The sewage in Plaintiff's cell was two inches deep and stayed there for about six hours. *Id.* at 10:4-9; 11:6-9. Even after the water was shut off, Plaintiff's toilet kept overflowing periodically due to other inmates flushing their toilets. *Id.* at 28:11-23. While his cell was flooded, Plaintiff sat on his desk, but would walk barefoot to the door of his cell and back to the desk. *Id.* at 10:17-25.

When the toilets flooded, Defendant Burris was the supervisor in charge of the shift on B-Pod. Burris reported about the situation to his superior and maintenance was notified. Burris Resp. to Interrogs. at 1 [DE 83-3]. Defendant Penning was a Sergeant working in the B-Pod that same night. Penning directed his staff to contain the overflowing sewage and kept the shift captain updated. Penning Resp. to Interrogs. at 3-4, 7 [DE 83-3]. The inmates were removed one at a time from their cells as the prison staff attempted to clean the cells. Around 2:00 or 2:30 a.m., Defendants Mahoney and Nicksich placed Plaintiff in an empty cell to allow him to use the bathroom while they mopped and dried his cell. Ellis Dep. at 17:12-24 [DE 83-2]. When they were done, they returned Plaintiff to his cell, which was still dirty with refuse from the sewage. Mahoney and Nicksich continued this routine with other affected inmates in the B-Pod. Plaintiff eventually used his own towel, soap, and shampoo to further clean the cell. *Id*. at 20:17-18. A total of fourteen restrictive housing cells, with an offender in each of them, were flooded, as well as some of the showers. Penning Resp. to Interrogs. at 1. The flooding was not totally stopped until about 5:45 am. *Id*. at 5.

During the flooding, Plaintiff repeatedly asked Mahoney and Nicksich to take a shower, but

---

[1] The flooding was caused by another inmate flushing clothes down the toilet. Ellis Dep. 9:18-25 [DE 82-2].

3

they would not let him. Ellis Dep. at 19:19-25 [DE 82-2]. Plaintiff also spoke with Defendant Penning, who came down about ten minutes after the flooding. Penning told Plaintiff they that were going to handle the flooding, but "we're not getting bleach and all that, and you know, we're not getting showers." *Id.* at 14:15-25; 14:1-16. Plaintiff showered the following afternoon, which was consistent with his normal schedule of showering once every three days. *Id.* at 29:3-12, 19-23.

On January 16, Plaintiff submitted a health care request form indicating that his right foot was swollen due to the toilet overflowing. He saw a nurse and was given Tylenol. *Id.* at 22:18-23. His pain lasted "probably about a week, maybe a little over seven days" and then the swelling went away. *Id.* at 21:24-22:1; 23:1-4.

## IV. Analysis

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the

4

plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). In other words, a plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Haywood v. Hathaway*, 842 F.3d 1026, 1031 (7th Cir. 2016) (quotation marks omitted).

It is clear that being held for six hours in a cell filled with two inches of sewage would be unpleasant. But even if the Court were to assume that Plaintiff's conditions of confinement rose to the level of denying him the minimal civilized measure of life's necessities, summary judgment is nevertheless warranted because he has not shown that any Defendant acted with deliberate indifference toward his health and safety. To defeat summary judgment, Plaintiff must point to evidence that the defendants "acted in an intentional or criminally reckless manner, i.e., [they] must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board*, 394 F.3d at 478. In this case, Defendants actively responded to the flooding in the B-Pod. When the toilets began to overflow, Burris reported to his superior about the situation and maintenance was notified. Penning directed staff to contain the overflowing water and kept the shift captain updated. Mahoney and Nicksich were cleaning the inmates' cells one by one and got to Plaintiff's cell around 2 or 2:30 a.m. They put him in an empty cell to use the bathroom while they mopped and dried his cell. They continued to do the same in each flooded cell, but could not clean the cells totally because the flooding was not completely contained.

Plaintiff argues that he should have been immediately relocated and allowed to shower, and

5

should have been given bleach. Defendants present evidence that it would have been impractical to try to relocate or give showers to all fourteen affected inmates, and that prisoners are not permitted to have cleaning chemicals on their own. *See* Burris Resp. to Interrogs. at 3-5, Penning Resp. to Interrogs. at 3-5 [DE 83-3]. Plaintiff has not presented evidence to contradict those points, nor shown that the prison was obligated to take those steps. *See Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997) ("Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment.") (citing *Farmer*, 511 U.S. at 833–34). Plaintiff was permitted to shower in the afternoon, 18 hours after the flooding began, and consistent with his normal schedule of showering once every three days. *See Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) ("[L]imiting inmates to weekly showers does not violate the Eighth Amendment.") (listing cases). Assuming as true Plaintiff's allegation that he suffered pain and swelling in his foot because of the standing water, the injury was minimal and quickly resolved, and Plaintiff has not presented evidence that any Defendant was aware of the injury or acted with deliberate indifference to his health and safety.

## V. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment [DE 81] and **DIRECTS** the Clerk to enter judgment in favor of Defendants Sgt. Alonzo Burris, Sgt. Steven Penning, Officer Daniel Nicksich, and Officer Brandon Mahoney.

So ORDERED this 20th day of March, 2020.

                                                    s/ John E. Martin
                                                    MAGISTRATE JUDGE JOHN E. MARTIN
                                                    UNITED STATES DISTRICT COURT

cc:    All counsel of record
       Plaintiff, *pro se*